UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PATRICK DELICES,

        Plaintiff,

                                      Case No. 18-cv-1839-bhl

    v.

UW BOARD OF REGENTS,

        Defendant.

## DECISION AND ORDER RESOLVING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND MOTION FOR SANCTIONS

From 2013 through 2016, Plaintiff Patrick Delices (Delices) attended the University of Wisconsin Milwaukee (UWM) as a graduate student. He arrived at UWM with impressive credentials and was promptly awarded a substantial fellowship. Within three years, however, the hope and promise that accompanied Delices on his arrival had evaporated. UWM officials concluded that Delices had failed to perform to the university's expectations, declined to renew his fellowship, and denied him promotion to dissertator status. Delices, who is a Black male from Haiti, responded by filing discrimination complaints with the federal government and the university. When those efforts did not bring vindication, Delices filed this federal civil rights lawsuit. Now, after five years of protracted litigation, both parties seek summary judgment. The only remaining defendant, the Board of Regents of the University of Wisconsin System (Defendant or UW System) seeks dismissal of Delices's claims in their entirety. (ECF No. 102.) Delices seeks partial summary judgment in his favor, along with sanctions for alleged discovery violations. (ECF Nos. 112 & 132.) Because the record does not support Delices's claims, Defendant's motion will be granted, Delices's motions denied, and the case dismissed with prejudice.

## PROCEDURAL HISTORY

On November 13, 2017, Delices filed a 14-count *pro se* complaint, along with several hundred pages of exhibits, in the United States District Court for the Southern District of New York. (ECF No. 2.) In that original pleading, Delices alleged the UW System, UWM, and numerous UWM faculty members, had discriminated and retaliated against him under several

1

federal and state laws. (*Id.* at 24-27.) On January 12, 2018, Delices amended his complaint but continued to assert the same 14 counts. (ECF No. 6.) On November 13, 2018, a year to the day after the case began, the case was transferred to this Court. (ECF No. 10.)

After numerous procedural filings and a judicial reassignment, on November 18, 2020, the Court resolved a number of pending motions at a status hearing. (ECF No. 45.) The Court granted in part and denied in part the then-named defendants' motion for partial dismissal and/or for a more definite statement. (*Id.*) The Court ruled Delices could proceed with Counts 1 through 7 (claims under Title VI for discrimination and retaliation) but only against the UW System. (*Id.*) The Court dismissed Delices's Title VI claims against UWM and the individually named defendants, explaining that UWM is not an entity subject to suit under Wisconsin law and the individual defendants were not proper defendants under Title VI. (*Id.*) With respect to the remaining counts, the Court walked through several issues with Delices's pleading, then granted defendants' motion for a more definite statement, and gave Delices time to amend. (*Id.*) The Court also denied several other motions, including a motion to appoint counsel.[1] (*Id.*)

On January 4, 2021, Delices timely filed a Second Amended Complaint, (ECF No. 53), which is now the operative pleading. In it, Delices asserts 11-counts, supported by a pared-down 150 pages of exhibits. (*Id.*) The first seven counts are for Title VI violations against the UW System based on: national origin discrimination (Count 1), race discrimination (Count 2), creation of a hostile educational environment (Count 3), and unlawful retaliation (Counts 4-7) (*Id.* at 26-27.) The remaining counts allege violations of the First Amendment (Count 8), the Fourteenth Amendment Equal Protection clause (Count 9), state defamation law (Count 10), and the Wisconsin Fair Employment Act (Count 11). (*Id.* at 28-29.) The Court dismissed Counts 8-11 on the UW System's motion, (ECF No. 82), and the case has since proceeded through discovery and to the filing of dispositive motions on the remaining claims.

---

[1] Delices has moved repeatedly to have counsel appointed. (ECF Nos. 9, 14, 39 & 60.) The Court has explained to him on several occasions that he is not entitled to appointed counsel in a civil case. (ECF Nos. 15, 45, 82.) As the holder of a master's degree, Delices is far from the most helpless *pro se* litigant. Moreover, there are many lawyers who specialize in and take discrimination cases on a contingent fee basis. And a successful Title VI plaintiff can recover fees for his counsel by statute. 42 U.S.C. §1988(b). This is simply not the type of case in which the Court would dip into its limited pool of volunteer lawyers. (*See* ECF No. 45.)

## DELICES'S FAILURE TO COMPLY WITH CIV. L.R. 56(b)

At the outset, the Court notes that despite ample warning, Delices has failed to comply with this Court's local rules governing summary judgment motions. A moving party that seeks summary judgment must file either a statement of material facts to which the parties have stipulated or a statement of proposed material facts as to which the moving party contends there is no material issue and that entitle that party to judgment as a matter of law. Civ. L.R. 56(b)(1). The statement must be comprised of numbered paragraphs containing short factual statements supported by specific references to admissible evidence. Civ. L.R. 56(b)(1)(C). A party opposing the motion must file a response to the moving party's statement of undisputed facts making clear which, if any, of its adversary's facts are in dispute. The opposing party may also set forth any additional facts that bear on the motion. The response must reproduce each numbered paragraph of the moving party's statement followed by a response. Civil L.R. 56(b)(2)(B). If a fact is disputed, the party must refer to an affidavit, declaration, or other part of the record that supports the claim that a genuine dispute exists as to that fact. *Id.* If the opposing party believes additional facts prevent summary judgment, it must include a statement, consisting of short, numbered paragraphs, setting forth each additional fact supported by references to affidavits, declarations, or other parts of the record. Civil L.R. 56(b)(2)(B)(ii).

All parties, including those proceeding *pro se*, must follow these local rules; "[f]ailing to do so can prove fatal" to one's claims. *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 525 (7th Cir. 2020) (upholding district court's striking statement of facts when the statement "misrepresented the evidence, contained inaccurate and misleading citations to the record, and presented improper arguments rather than materially disputed facts"); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) ("We have . . . repeatedly upheld the strict enforcement of [local] rules, sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts."). "A district court is not required to 'wade through improper denials and legal argument in search of a genuinely disputed fact.'" *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (quoting *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)).

In this case, the UW System complied with its obligations under the local rules. It submitted a set of properly supported proposed findings of fact with its motion. (ECF No. 104.)

Because Delices is proceeding *pro se,* the local rules also required the UW System to provide notice to him of his response obligations and the consequences of any failure to comply with those obligations. *See* Civil L.R. 56(a). Defendant complied with this requirement. Its summary judgment filing notified Delices that any factual assertions in its supporting materials would "be accepted by the judge as true unless you submit affidavits or declarations or other admissible documentary evidence contradicting such assertion." (ECF No. 102 at 2.) The filing also made clear that Delices's "[f]ailure to oppose the Defendant's declarations (or other admissible proof) with [his] own affidavits or declarations (or other admissible proof) may result in entry of judgment against" him. (*Id.*) Defendant also included the full text of Civil L.R. 56(a), Civil L.R. 56(b), and Civil L.R. 7 in its filing, as required by Civil L.R. 56(a)(1)(B). (*Id.* at 3-9.)[2]

Notwithstanding the clear requirements of the rules and the notice he received, Delices has neither responded to the UW System's proposed findings of fact nor submitted proposed findings of fact of his own. The closest he comes is a statement in his (late-filed) motion for partial summary judgment declaring that he "wishes for his Partial Summary Judgment to be attached as facts, along with his Third Amended Complaint." (ECF No. 117 at 2.) This is neither a response to the UW System's proposed facts nor a set of his own facts. It is also not supported by affidavits, declarations, or other properly authenticated evidence. Moreover, there is nothing attached to his filing that is captioned or resembles a third amended complaint. Delices also unhelpfully instructs the Court to "take judicial notice of the facts directly to this response motion." (*Id.*)

This is not how summary judgment works. Even though he is *pro se*, Delices is not entitled to ignore the rules. Nor can he shift his own responsibilities to others by directing his adversary and the Court to ferret out proposed facts from his non-compliant filings. *See Smith*, 321 F.3d at 683 (finding "district court did not abuse its discretion in deeming admitted and only considering the defendants' statement of material facts" when plaintiff's summary-judgment materials "were woefully deficient in either responding adequately to the defendants' statement or in setting forth additional facts with appropriate citations to the record"). Moreover, even if the Court were inclined to excuse him from his procedural duties, which it is not, Delices has provided no proper evidence for the factual assertions in his filings. He attaches several appendices to his response

---

[2] The Court also reminded Delices to comply with the Local Rules when the Court granted Delices permission to file a brief in support of his motion for partial summary judgment in excess of the local rules' page limit. (ECF No. 114.)

4

brief, but none of the enclosed documents are authenticated. (ECF No. 117-1.) Having dutifully submitted 200 proposed findings of fact, supported by no less than six declarations under penalty of perjury, the UW System should not be unfairly subjected to Delices's deficient filings. Consistent with the local rule, the Court will deem both the UW System's proposed findings of fact (ECF No. 104) and its statement of additional facts (ECF No. 118) admitted for the purposes of summary judgment.[3]

## FACTUAL BACKGROUND

### A.    Delices Begins Graduate Studies at UWM.

During the fall semester of 2013, Delices began study as a doctoral candidate in the Department of African and African Diaspora Studies (the Department) at UWM. (ECF No. 104 ¶¶1, 9.) Delices is a Black male from Haiti with Cuban ancestry. (*Id.* ¶8.) During the spring semester of 2014, Delices enrolled in a graduate colloquium taught by Prof. Jeffrey Sommers (Sommers), a professor in the Department. (*Id.* ¶¶2, 10.) Sommers later served as Delices's advisor. (*Id.* ¶14.) As advisor, Sommers was tasked with steering Delices to produce novel research in a chosen area of interest, which Delices defined broadly as "something on Haiti." (*Id.* ¶¶15-17.) Sommers also provided Delices guidance on required coursework, examinations, and a doctoral dissertation. (*Id.* ¶15.)

The Department expects graduate students working towards a PhD to complete a preliminary examination by the end of their third year in the program. (*Id.* ¶16.) The examination has two parts. (*Id.*) First, the student must obtain approval of a written dissertation proposal. (*Id.*) Second, the student must successfully provide an oral defense of the proposal before a preliminary examination committee. (*Id.*) When Delices expressed interest in pursuing a dissertation topic on Haiti, Sommers advised him that although Haiti was "important, . . . there ha[d] been no shortage of work on it [and that] [f]unding and job prospects w[ould] be slim." (*Id.* ¶18.) Delices persisted, however, referring to Haiti as his "passion and calling." (*Id.* ¶19.) Sommers then further advised him to review dissertation topics to see what had already been done regarding the study of Haiti and to narrow his focus. (*Id.* ¶¶20-21.)

---

[3] On May 9, 2022, after briefing was completed, Delices filed a self-styled "Amended Reply/Opposition to Defendants' Reply and Further Motion for Partial Summary Judgment" (ECF No. 129) and attached 69 pages of documents, many duplicative of documents Delices had already submitted. None of these materials were authenticated. Even if they were, the Court declines to consider this untimely submission.

During the spring semester of 2014, Sommers recommended that Delices be awarded an Advanced Opportunity Program ("AOP") Fellowship. (*Id.* ¶12.) The AOP Fellowship helps underrepresented students obtain graduate degrees. (*Id.*) During the time frame relevant to this lawsuit, an AOP Fellowship stipend was $15,000 per academic year, full coverage of resident tuition, a remission of the out-of-state portion of the tuition (if applicable), health insurance and other benefits including a $1,000 travel award. (*Id.* ¶113.) As a condition of the fellowship, recipients had to comply with certain rules and eligibility requirements in the AOP's Fellowship Recipient Handbook. (*Id.* ¶114.) One of these conditions expressly prohibited recipients from working more than 10 hours per week. (*Id.* ¶15.) At Sommers' recommendation, Delices was awarded the fellowship for the 2014-2015 academic year. (*Id.* ¶¶12-13.)

**B.** **Delices Struggles and Receives Help During the 2014-2015 Academic Year.**

Delices experienced several problems with his academic progress starting in the fall of 2014. Dr. Ermitte Saint Jacques, a Department faculty member, reported that Delices was frequently absent, had failed to submit a final assignment, and asked to take an incomplete. (*Id.* ¶¶25-26.) Jacques showed patience, agreeing to let Delices take an incomplete with the understanding that Delices would submit his final assignment over the winter break. (*Id.* ¶27.) Despite this accommodation, Delices failed to deliver the assignment timely, eventually submitting it in mid-July 2015. (*Id.* ¶¶27-29.) But, even then, he was treated generously. After Delices explained that his AOP Fellowship depended on his grades, Jacques agreed to allow him to re-write the final assignment and ultimately gave him an "A" for the course. (*Id.* ¶30.)

Sommers observed other performance and professionalism issues. (*Id.* ¶33.) In an attempt to bring a graduate student into the publication process, Sommers invited Delices to participate in drafting a book. (*Id.* ¶35.) Sommers planned to have Delices make original research contributions (i.e., writing chapters or performing editorial work) and then credit him as a co-author. (*Id.* ¶36.) But Delices ended up contributing very little; he drafted none of the book's chapters and performed no archival research. (*Id.*) His only significant contributions were to the introduction and conclusion, neither of which were sufficient to make him a co-author. (*Id.*) Instead, he was credited as a "contributor" on the book's cover. (*Id.*)

Sensing his struggles, Sommers tried to help Delices with his grades. Delices was enrolled in several independent study courses with Sommers during the 2014-2015 academic year. (*Id.* ¶34.) Hoping that positive grades would boost Delices's morale and get him back on track,

Sommers gave him undeserved "A's" for his work. (*Id.*) With the benefit of hindsight, Sommers no longer believes this was the correct course of action. (*Id.*)

Sommers also tried to help Delices with his absences. Believing that the absences were largely the result of Delices having moved back to New York, Sommers suggested that Delices return to Milwaukee. (*Id.* ¶¶23, 38). Sommers explained that Delices needed to repair relationships with faculty and that being present was the best way to do it. (*Id.* ¶38.) Sommers also emphasized that for Delices to advance in the program he would need to assemble a dissertation committee with Department members and secure faculty support and letters of recommendation from them. (*Id.*) Delices responded that he wished he could return to campus but moving back was "not financially feasible." (*Id.* ¶40.)

Sommers continued to advise Delices as best as he could, with most of his guidance being offered remotely, either over the phone or through webchats or email, as Delices was rarely present in Milwaukee. (*Id.* ¶41.) Sommers counseled Delices for approximately 18 months on developing a focused dissertation topic and encouraged him to review dissertations that were closely related to his field of interest so he would know what research had already been done. (*Id.* ¶¶42-43.) Delices declined to follow this advice. (*Id.* ¶43.)

### C. The Department Receives and Investigates an Anonymous Complaint about Delices.

On July 10, 2015, Professor Erin Winkler, who served as Department Chair during the first part of Delices time at UWM, received a large envelope marked "Chair Erin Winkler, Confidential" in her work mailbox. (*Id.* ¶¶1, 44.) Inside were an unsigned letter and accompanying materials suggesting that Delices had been misrepresenting his credentials and was working full-time in New York in violation of the terms of his fellowship grant. (*Id.* ¶46.) A second copy of the same complaint was also delivered to a Dean and Associate Dean at the College of Letters and Sciences. (*Id.* ¶54.) In response, both the Department and UWM's Graduate School conducted investigations. (*Id.* ¶¶68-70.) While neither investigation resulted in formal disciplinary action, both inquiries led to troubling findings. (*Id.* ¶¶104-06.)

The Department's investigation focused on Delices's alleged misrepresentation of his credentials. After consulting with colleagues, Winkler set up a subcommittee, consisting of Dr. Anika Wilson, Dr. Daniel McClure, and Dr. Nolan Kopkin, to investigate the credentialling issue. (*Id.* ¶73.) As part of the subcommittee's work, Dr. Wilson questioned Delices directly about

7

multiple websites that had referred to him as "professor." (*Id.* at ¶80.) Delices had justifications for each. With respect to an article posted on the *Institute of the Black World* website, Delices explained he was not aware that he had been referred to as a "professor of African Studies at Columbia University" in the article and attributed the error to a mistake by online journalists. (*Id.* ¶82.) Delices next brushed off an article on *The Final Call*'s website in which he was described as a "professor" working for a college in New York, contending the journalist had misunderstood his explanation of his background. (*Id.* ¶83.) Similarly, Delices asserted that an article on the Koskeacity website referred to him as "professor" in the past tense and explained that the website made clear that he had previously taught courses in the Department of Africana Studies at Hunter College in New York. (*Id.* ¶85.) Delices insisted that, even after he stopped teaching in New York, people continued to call him professor, a mistake he viewed as understandable given his lengthy history of teaching as Hunter College. (*Id.* ¶86.) Delices also offered that a union lawyer for CUNY had told him it was okay to call himself "professor." (*Id.* ¶87.)

As the investigation proceeded, Wilson became skeptical that Delices was unaware that it was inappropriate for him to be referred to as "Dr." even though he did not hold a Ph.D., or as "professor" even though he was not then teaching a class and did not hold the rank of assistant, associate, or full professor. (*Id.* ¶91.) The investigation ultimately found that there had been a pattern of professional misrepresentation and Delices had purposefully represented himself or allowed himself to be represented as "Professor" and "Dr." on numerous occasions and had inflated his rank in a misleading manner. (*Id.* ¶105.) Despite these findings, the subcommittee excused Delices's conduct, offering that the UW System non-academic misconduct policies lacked a clear category of professional misrepresentation. (*Id.* ¶106.) Wilson documented the subcommittee's findings in a letter in order to create a record and to place Delices on notice that if these misrepresentations continued, he could be subjected to sanctions. (*Id.* ¶103.) While the letter was technically not disciplinary, a copy of the letter was sent to Delices and placed in his Graduate School File. (*Id.*)

UWM's Graduate School also investigated the anonymous complaint. (*Id.* ¶118.) The Graduate School focused on the allegations that Delices was employed full-time in New York at "Teaching Teens to Think" (4Ts) while simultaneously receiving an AOP Fellowship. (*Id.* ¶¶118-19.) Wendy Labinski, Assistant Dean and Unit Business Representative of the Graduate School, conducted a telephonic employment verification interview of 4Ts's President, who initially

confirmed that Delices was employed by 4Ts in a full-time, year-round, paid position. (*Id.* ¶119.) Based on this information, Marija Gajdardziska-Josifovska, Dean of the Graduate School, sent Delices a letter dated August 19, 2015, informing him that his full-time employment was a violation of the terms of his AOP Fellowship and that she was suspending his award renewal for the 2015-2016 academic year. (*Id.* ¶120.) She warned that unless Delices could provide satisfactory information substantiating that he did not work more than 10 hour per week during his time as an AOP Fellow, she would cancel his AOP Fellowship award permanently and consider proceedings to pursue repayment for the AOP Fellowship monies he had previously received. (*Id.*)

On August 27, 2015, Delices submitted a response letter and supporting materials. (*Id.* ¶121.) He explained that he had been aware of and in compliance with all terms of the AOP Fellowship throughout his receipt of the awards, including the requirement that he not work more than 10 hours per week. (*Id.* ¶122.) Delices insisted that the information contained on the 4Ts website was inaccurate and he was no longer serving as the Senior Vice President of Administration for the organization. (*Id.*) Delices also submitted a notarized statement from 4Ts's President repudiating his prior telephonic statements. (*Id.* ¶123.) Contrary to the phone interview, the President now swore that Delices had *never* served 4Ts in a paid position. (*Id.* ¶¶123-24.) He further claimed that Delices's information on the organization's website was for "cosmetic and marketing purposes [only] until [4Ts could] find a replacement and properly update the company's website." (*Id.* ¶125.)

Given the contradictory information received, Gajdardziska-Josifovska ultimately concluded that the results of the investigation were troubling, but inconclusive. (*Id.* ¶126.) Accordingly, on September 2, 2015, Gajdardziska-Josifovska informed Delices via letter that she was giving him with the benefit of the doubt and reinstating his AOP Fellowship for the 2015-16 academic year. (*Id.* ¶128.)

### D. Delices Struggles to Pass His Preliminary Examination.

As Delices's adviser, Sommers continued to work with Delices to prepare him for his preliminary examination during the summer and fall semester of 2015. (*Id.* ¶129.) Sommers provided Delices with practice preliminary exam questions and a reading list. (*Id.* ¶¶131, 133.) Sommers also repeatedly advised Delices that he would be expected to produce a novel work of research. (*Id.* ¶¶ 17-21, 129.)

9

Ultimately, on January 4, 2016, Sommers emailed Delices a formal preliminary exam question, which Delices answered within the allotted time. (*Id.* ¶135.) The answer was reviewed by an exam committee consisting of Sommers, Dr. Harwood McClerking and Dr. George Bargainer. (*Id.* ¶136.) All three agreed that Delices did *not* pass. (*Id.* ¶¶ 141-46.) The committee acknowledged his solid grasp of Haitian history but determined that he lacked understanding of the topic of imperialism and conflated individual theorists with theoretical schools that the theorists did not represent. (*Id.* ¶144.)

Notwithstanding his initial failure, Delices was provided a chance to retake the preliminary examination. (*Id.* ¶147.) Even before the retake, Sommers concluded he could no longer serve as Delices's advisor, and decided he would step down from the role if Delices passed and was allowed to progress to the dissertation phase of the graduate program. (*Id.* ¶165.) Sommers believed he had done his best to counsel and advise Delices, but Delices had refused to follow Sommers' advice. (*Id.* ¶¶168-69.) Given Delices's unwillingness or inability to accept Sommers' recommendations, Sommers decided he could not continue as his advisor. (*Id.* ¶169.)

In June of 2016, Delices re-took his preliminary examination. (*Id.*) This time he passed, but not without controversy. In Sommers' personal estimation, Delices still had not performed satisfactorily. (*Id.* ¶171.) After the exam, Sommers emailed the current and incoming chairs of the Department to let them know that while Delices had passed on his second attempt, this was due to the votes of the other two members of the committee. (*Id.*) Winkler advised Sommers to inform Associate Dean Tracey Heatherington of his decision to withdraw as Delices's advisor. (*Id.* ¶172.)

On June 4, 2016, Sommers emailed Delices to notify him that he had passed his preliminary examination. (*Id.* ¶173.) Sommers also told him that there were still significant concerns about his deficiencies going forward. (*Id.* ¶174.) Specifically, Sommers told Delices that he would have to perform "no small degree of further work" in placing theorists in theoretical schools in dialogue with each other, as opposed to providing basic summaries of foundational theory. (*Id.*) Sommers noted that to date, Delices's written work in the program had "chiefly consisted of literary reviews" and a "dissertation must go well beyond this." (*Id.*)

Ten days later, on June 14, 2016, Sommers notified Delices by email that he would no longer serve as his advisor. (*Id.* ¶175.) At this point, Delices had not yet developed any well-defined research direction, let alone a research topic. (*Id.* ¶176.) Sommers was thus not leaving a

dissertation project in process but was departing before Delices had even started work on the project. (*Id.*) With Sommers's departure as his advisor, Delices would be free to select a new advisor and establish a dissertation committee to review and approve a prospectus. (*Id.* ¶177.)

### E. Delices's Fellowship is Not Renewed, and He is Not Granted Dissertator Status.

As Delices was struggling to pass his preliminary examination, he was also seeking renewal of his AOP Fellowship for the 2016-2017 year. (*Id.* ¶148.) As Dean of the Graduate School, Gajdardziska-Josifovska's office was responsible for evaluating the renewal request. (*Id.* ¶149.) Consistent with the normal process for evaluating renewal requests, the Dean's office staff requested and reviewed Delices's transcripts. (*Id.* ¶¶ 154-64.) Gajdardziska-Josifovska noticed several issues. First, Delices had primarily enrolled in 300-level (undergraduate level) courses throughout the 2015-2016 academic year, contrary to the proposed course of study he had submitted when requesting renewal of the fellowship. (*Id.* ¶154.) And he had enrolled in many classes on a credit/no credit basis, in violation of the AOP Fellowship's terms. (*Id.* ¶155.)

Delices's renewal application also failed to indicate if he had support from his academic program. (*Id.* ¶157.) Accordingly, the Dean's office contacted the Department to discuss the issue. (*Id.*) Sommers spoke with other faculty members, who agreed that renewal was not warranted. (*Id.* ¶159.) On March 30, 2016, Sommers sent Associate Dean Heatherington a letter reporting that the Department found Delices's work untimely and performed at a low standard. (*Id.* ¶160.) The letter also indicated that Delices was frequently absent and had recently failed his first attempt at his preliminary examination. (*Id.*)

Based on this information, the Dean's office denied renewal of the AOP Fellowship. (*Id.* ¶161.) It explained that Delices had failed to satisfy the two primary requirements of his AOP Fellowship: (1) his transcript demonstrated that he was not making the type of academic progress expected of a graduate student; and (2) he did not have the support of his program for renewal of his award. (*Id.*)

Having lost out on the renewal, Delices nevertheless continued his efforts to obtain dissertator status. In UWM's graduate program, a Department graduate student must assemble a dissertation committee, prepare a dissertation prospectus, and then defend a prospectus before the committee prior to being placed in dissertator status. (*Id.* ¶¶179, 182, 184.) The process of assembling a dissertation committee generally takes significant time (longer than a few weeks)

and requires at least one in-person meeting with the prospective committee members to discuss the student's background and the proposed area of research.  (*Id.* ¶187.)  The Department's practice of requiring graduate students to successfully defend their dissertation prospectus before they are granted dissertator status is consistent with the expectations outlined in the Department's Handbook for Graduate Students.  (*Id.* ¶185.)  It is a uniform requirement for all graduate students in the Department to complete, defend and receive approval from their dissertation committee on a dissertation prospectus prior to being placed in dissertator status and being deemed to have completed their major "milestones."  (*Id.* ¶194.)

On July 27, 2016, after Delices was passed in his second attempt at the preliminary examination, he received an email from Sommers explaining that the next step in the program would be to find a dissertation advisor, compose a dissertation committee, and prepare a dissertation prospectus.  (*Id.* ¶179.)  Sommers noted that Delices had ignored his advice over the past year and a half to prepare an acceptable dissertation topic and suggested Delices would "be better served by an advisor you can find more suitable cooperation with."  (*Id.*)

Wilson, who was then serving as Department Chair, noted that the Department's milestone system showed Delices had filed a dissertation topic summary with the Graduate School.  (*Id.* ¶180.)  When she contacted Delices to confirm this, Delices responded that he had filed a dissertation topic summary "some time ago."  (*Id.* ¶181.)  Wilson later spoke with him and explained the process for completing and defending his dissertation prospectus.  (*Id.* ¶184.)  She described the dissertation committee's role in developing and approving the prospectus.  (*Id.*)  Although Delices asked for her help in assembling a committee, Wilson explained (and confirmed in a later email) that the graduate student, not the Department, was "the central organizer" of the dissertation committee.  (*Id.* ¶186.)  Wilson reported that she was aware of only limited efforts by Delices to secure a dissertation committee, including just two brief emails to two Africology faculty members, both of which were sent only weeks prior to the Fall 2016 semester.  (*Id.* ¶188.)

In early September of 2016, Delice discussed the items he had completed for his Graduate School "milestones" in a series of emails with Sommers, Wilson, and Shane Haensgen, Doctoral Retention Advisor of the Graduate School.  (*Id.* ¶¶190-92.)  Delices claimed he had completed *all* milestones and asked to be moved to dissertator status.  (*Id.* ¶191.)  But, contrary to his statements, Delices had not in fact selected a dissertation advisor or secured a dissertation committee.  Nor had he submitted, defended, and received approval for a dissertation prospectus.  (*Id.* ¶¶193-97.)

12

Wilson made clear that to be granted dissertator status, Delices had to first develop, defend, and have a dissertation proposal approved by his dissertation committee—a uniform requirement of all graduate students in the Department and stated in the Department Handbook. (*Id.* at ¶¶193-94, 199.) Delices never completed these requirements. (*Id*. ¶197.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Anderson*, 477 U.S. at 248. The moving party bears the burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To survive a properly supported summary judgment motion, the opposing party must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citation omitted). If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). This favor, however, does "not extend to drawing inferences that are supported by only speculation or conjecture." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted).

## ANALYSIS

Following the Court's motion to dismiss rulings, Delices's remaining claims (Counts 1-7) are for alleged violations of Title VI. Counts 1 and 2 assert claims against the UW System for discrimination based on national origin and race.[4] (ECF No. 53 at 26.) Count 3 alleges the UW

---

[4] In his response brief (but not his Second Amended Complaint), Delices also alleges discrimination on the basis of his sex. (*See* ECF No. 117 at 6-7.) This is a dead end. Sex discrimination is not recognized under Title VI. *Regents of the Univ. of Cal. v. Bakke*, 438 U.S. 265, 287 (1978) ("Title VI must be held to proscribe only those racial classifications that would violate the Equal Protection Clause or the Fifth Amendment."); *Loch v. Bd. of Educ. of Edwardsville Cmty. Sch. Dist. No. 7*, No. 3:06cv-17-MJR, 2007 WL 1468675, at *4 (S.D. Ill. May 18, 2007) ("[Plaintiff's] claim of discrimination on the basis of sex or disability may not be brought under Title VI."). Delices

System subjected him to a hostile educational environment. (*Id.*) Counts 4 through 7 are for improper retaliation based on the actions of four UWM officials, Dr. Sommers, Dr. Wilson, Dean Gajdardziska-Josifovska, and "Provost Britz." (*Id.* at 26-27.) Because the undisputed evidence would not allow a reasonable jury to find that the UW System discriminated against Delices, subjected him to a hostile educational environment, or retaliated against him in violation of Title VI, the UW System's motion for summary judgment will be granted and Delices's motion for partial summary judgment will be denied. Delices's motion for sanctions is also without merit and will be denied.

## I. Delices's Discrimination Claims (Counts 1 and 2) Fail as a Matter of Law.

Delices' first two claims allege improper discrimination based on his national origin and race in violation of Title VI. (ECF No. 53 at 26.) Title VI prohibits discrimination in connection with programs that receive Federal financial assistance: "No person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The Supreme Court has confirmed that a Title VI plaintiff must demonstrate that he or she was subjected to "*intentional* discrimination." *Alexander v. Choate*, 469 U.S. 287, 293 (1985) (emphasis added).

Courts analyze Title VI discrimination claims using the same framework that applies to Title VII claims. In weighing summary judgment in both settings, the basic legal question "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . or other proscribed factor caused the . . . adverse [educational] action." *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). And, as in the Title VII context, courts employ the *McDonnell Douglas* burden-shift framework to determine whether a plaintiff has sufficient evidence to survive summary judgment. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this approach, the plaintiff bears the initial burden of proving a *prima facie* case of racial discrimination by demonstrating that (1) he is a member of a protected class; (2) his performance met the defendant's legitimate, nondiscriminatory expectations; (3) he suffered an adverse action; and (4) the defendant treated similarly situated persons outside plaintiff's classification more favorably. *Little v. Ill. Dep't. of Rev.*, 369 F.3d 1007, 1011 (7th Cir. 2004). If

---

also makes arguments concerning First Amendment retaliation, but that claim was dismissed long ago. (*See* ECF No. 82 (dismissing Counts 8-11 of Second Amended Complaint).)

the plaintiff makes this showing, the burden then shifts to the defendant "to articulate [a] legitimate, non-discriminatory reason" for the challenged action. *McDonnell Douglas Corp.,* 411 U.S. at 802. Once the defendant does so, the burden of production shifts back to the plaintiff to prove by a preponderance of the evidence that the reasons offered by the defendant are actually a pretext for discrimination. *Little,* 369 F.3d at 1011. "Pretext 'means a dishonest explanation, a lie rather than an oddity or an error.'" *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002) (quoting *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000)).

### A. Delices Has Not Established a *Prima Facie* Case of Racial Discrimination.

The burden of establishing a *prima facie* case of discrimination under Title VI is not "onerous." *Texas Dep't of Cmty Affs. v. Burdine*, 450 U.S. 248, 253 (1981). But the "failure to establish any one of the initial four elements defeats a discrimination claim." *Bio v. Fed'l Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005). There is no dispute that Delices is a Black male of Haitian and Cuban descent. (ECF No. 104 ¶8). But this is the only element of his race and national origin discrimination claims that Delices has clearly established. Delices has given the Court and Defendant little help in identifying the specific adverse educational actions that form the basis for his claims. But even putting that issue aside, his claims fail at summary judgment because Delices has not shown that he was meeting the legitimate expectations for a graduate student or that the UW System treated similarly situated individuals outside his protected categories differently. Without proper support for two of the four necessary elements of his *prima facie* case, Delices's race and natural origin discrimination claims fail as a matter of law. When a plaintiff has failed to establish any one element of a *prima facie* case, summary judgment is appropriate. *Lewis v. City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007.) Delices has failed to establish at least two.

### 1. Delices has Not Shown He Was Meeting Defendant's Legitimate Expectations.

Delices cannot make out a *prima facie* case of discrimination because he cannot prove that he was meeting the legitimate expectation of the Department. *See Peele*, 288 F.3d at 328-29 (affirming summary judgment for employer on plaintiff's discrimination claims because the plaintiff failed to demonstrate that she was meeting her employer's legitimate performance expectations at the time of her termination, or that the employer applied its expectations in a disparate manner). The relevant issue is whether an employer's expectations were attainable and sincere, not whether an employee had an explanation for failure. *Sargis v. Amoco Corp.*, 996 F. Supp. 790, 7995 n.8 (N.D. Ill. 1998) (In order to prevail on her discrimination claim, employee

15

must present evidence that employer "purposely set her up to fail or used her failure as an excuse to discriminate.").

The undisputed facts confirm that Delices was not meeting the legitimate expectations of a graduate student. Delices was absent from seminars, turned work in late and received incompletes. His grades were also below expectation: he received numerous Bs when graduate students are expected to earn As. (ECF No. 104 ¶160.) For the 2015-16 academic year, Delices had primarily enrolled in undergraduate level courses and on a credit/no credit basis, atypical of graduate-level work. (*Id.* ¶¶155-56.) Although members of UWM's faculty, including Sommers and Wilson, advised Delices to the best of their ability, it was ultimately Delices's responsibility present a focused and novel subject for his dissertation. Yet Delices never prepared an acceptable dissertation prospectus. While no one suggests that meeting these expectations was necessarily easy, for purposes of Delices's Title VI claim, the question is whether these requirements were reasonable and whether Delices's performance satisfied them. There is no basis for concluding that Defendant's expectations were not legitimate or that Delices was not provided a fair chance to perform. Accordingly, his claim fails. *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 746-47 (7th Cir. 2002) (employee failed to make out a *prima facie* cases where he could not show that employer set him up to fail or gave him tasks that he could not have completed in allotted time)*; McGee v. Wis. Bell, Inc.*, 349 F. Supp. 2d 1146, 1157-58 (W.D. Wis. 2004) (plaintiff failed to make out a *prima facie* case where plaintiff's errors were costly to his employer and he was unable to satisfactorily explain why he could not satisfy the low error rate that the employer expected) *aff'd.,* 198 F'App'x 531 (7th Cir. 2006).

## 2. There is No Evidence the UW System Treated Similarly Situated Persons Outside Delices's Protected Classifications More Favorably.

Delices has also failed to make out a *prima facie* Title VI discrimination case because he has not identified any graduate student who was similarly situated to him and treated differently. In the employment context, a plaintiff attempting to show that similarly situated employees were treated more favorably must show that the employees are directly comparable to him in all material aspects. *Herron v. DaimlerChrysler Corp.* 388 F.3d 293, 300 (7th Cir. 2004). Applying this requirement here means Delices must show that other students who were similarly situated with respect to performance, qualifications, and conduct. *See Peele*, 288 F.3d at 330 (citation omitted).

Delices has not identified even a single non-Black graduate student or non-Haitian graduate student who had similar grades, performance and conduct and was treated more favorably than

16

Delices. Delices's failure to provide this evidence dooms his *prima facie* case. *See Logan v. Caterpillar, Inc.*, 246 F.3d 912, 920 (7th Cir. 2001) (affirming summary judgment for the employer because the plaintiff failed to establish that he was treated more harshly than a similarly situated employee outside the protected class); *Peele*, 288 F.3d at 332 (affirming the district court's decision to grant defendant's motion for summary judgment on the alternate ground that plaintiff failed to make out a *prima facie* case of discrimination).

### B. No Reasonable Factfinder Could Find that Delices Suffered an Adverse Action as a Result of his Race or National Origin.

Even if Delices had made out a *prima facie* case of discrimination, his claims would still fail at summary judgment because the record cannot support a finding of discrimination based on race or national origin. The UW System has provided a detailed explanation for its handling of Delices's performance as a graduate student and he has offered no valid evidence of pretext. The record thus confirms that even if Delices had been meeting the UW System's reasonable expectations for graduate students, the allegedly adverse actions taken against him were undertaken for legitimate, non-discriminatory reasons. Accordingly, the UW System is entitled to summary judgment and Delices's affirmative summary judgment motion must be denied.

The Court's analysis of Delices's discrimination claims is made more difficult by his failure to clearly identify the specific adverse educational actions he claims he suffered as a result of any improper discrimination. His filings are long on general gripes, grievances, and accusations but short on specifics related to his claims. Given his *pro se* status, the Court will read Delices's submissions liberally. Using this generous approach, the Court can identify, and will assume for purposes of summary judgment, that there are four adverse actions Delices claims were the result of discrimination: (1) he was improperly subjected to investigation based on an anonymous complaint; (2) he was wrongfully failed in his first attempt to take his preliminary examination; (3) he was improperly denied renewal of his AOP Fellowship; and (4) he was wrongfully denied promotion to dissertator status. The Court will analyze these four adverse actions based on the totality of the record. While parties are often tempted to divide the record into separate groups of direct and indirect (or circumstantial) evidence, the Seventh Circuit has cautioned against such an approach. *Ortiz*, 834 F.3d at 765. Rather, the proper approach is to consider the evidence as a whole and not divide it into direct and indirect buckets. *Id.* ("Evidence is evidence. Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.'") The

17

ultimate question at summary judgment is whether the entirety of the evidence would allow a reasonable jury to find that the plaintiff's protected class or protected activity caused the adverse academic action. *Id.*

### 1. The Investigations Were Conducted for Legitimate Reasons.

Delices's contention that he was subjected to improper investigations for discriminatory purposes is defeated by the record. The UW System has offered a detailed non-discriminatory explanation of the circumstances surrounding the investigations. They began when Professor Winkler received an anonymous complaint alleging that Delices was misrepresenting his credentials and working full-time in violation of the terms of the AOP Fellowship. Because the complaint raised serious concerns about Delice's conduct, two investigations followed, one by the Department and the other by the Graduate School.

The Department created a subcommittee of three faculty members to investigate whether Delices was misrepresenting or inflating his credentials. The subcommittee identified a number of instances in which Delices had referred to himself or allowed himself to be referred to as "Dr." or "Professor" even though he lacked the credentials for those titles. A member of the subcommittee interviewed Delices and gave him the chance to be heard on the issues. In response, Delices dismissed each incidence as a misunderstanding, miscommunication, or something outside his control. The interviewer questioned Delices's insistence that he was unaware it was inappropriate to be referred to as "Dr." when he did not hold a Ph.D. or as "Professor" when he was not presently teaching a class and did not hold the rank of assistant, associate, or full professor. The subcommittee ultimately found that Delices had purposefully represented himself or allowed others to represent him as "Dr." or "Professor" on numerous occasions. Nevertheless, the Department acknowledged that UWM's policies did not have a clear category covering professional misrepresentation and did not discipline Delices. Instead, the Department put him on notice that if these misrepresentations continued, he could be subjected to sanctions.

The Graduate School investigated whether Delices was working full-time out of concern for the integrity of the program and in order to confirm that the fellowship's obligations were enforced. The investigation included a call with the President of 4Ts, the agency in New York for whom Delices had reportedly been working. Initially, the 4Ts's President confirmed that Delices was indeed employed by 4Ts full-time, year-round, in a paid position. Based on that conversation,

the Dean of the Graduate School notified Delices that his full-time employment was a violation of the terms of his fellowship and threatened to end the fellowship. But she also gave him the chance to respond. Delices denied violating the terms of his fellowship and supported his denial with a notarized letter from the 4Ts's President, contradicting his prior telephone statement and now claiming that Delices had never served the 4T organization in a paid position. Delices was again given the benefit of the doubt, and his AOP Fellowship was not cancelled.

Based on the totality of this evidence, the UW System has articulated a legitimate explanation for conducting both investigations. This is sufficient to shift the summary judgment burden back on to Delices to offer evidence from which a reasonable jury could find that the UW System's explanation is mere pretext. And, to demonstrate pretext, the plaintiff "must produce evidence from which a rational fact finder could infer that the employer engaged in intentional discrimination on the basis of the plaintiff's protected trait." *King v. Preferred Tech. Grp.*, 166 F.3d 887, 892 (7th Cir. 1999) (noting that the plaintiff always bears the burden of persuasion). But Delices has no evidence sufficient to carry that burden. A pretext for discrimination means "a lie, specifically a phony reason for some action." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002) (citation omitted). Pretext is "more than an unusual act; it means something worse than a business error; 'pretext' means deceit used to cover one's tracks." *Id.* (citation omitted). Delices has not satisfied this definition. He simply claims the investigations were undertaken for discriminatory and retaliatory reasons. (ECF No. 117 at 23.) These self-serving claims, without proof, are not enough to carry his burden. In sum, there is no evidence on which a rational jury could find that the Department and the Graduate School's investigations were motivated by a discriminatory animus based on Delices's race, color, or national origin.

### 2. The University System Failed Delices in His First Preliminary Examination on the Merits and Not Because of His Race or National Origin.

Delices's fares no better with his claim that the UW System improperly failed him in his first preliminary examination attempt because of his race or national origin. The UW System has explained the circumstances surrounding Delices's failure. The evidence shows that Sommers spent almost two years as Delices advisor, offering advice and trying to help Delices prepare for his preliminary examination. When Delices finally took his preliminary examination in January 2016, all three members of the committee who reviewed his performance agreed that he had failed. Their assessment of Delices's exam performance acknowledged his grasp of Haitian history but determined that he lacked understanding of the topic of imperialism and conflated individual

19

theorists with theoretical schools which the theorists did not represent. Even then, pursuant to Department rules, Delices was provided another opportunity to take the preliminary examination during the next examination cycle. He did so, although again not without controversy. Regardless, this evidence satisfies the UW System's obligation of articulating a legitimate, non-discriminatory reason for the committee's decision to fail Delices.

Again, Delices has no evidence that the Defendant's detailed non-discriminatory explanation for his failure on his first exam attempt is a pretextual lie. He offers no evidence that the exam was conducted in any way other than in accordance with the Department's practices and policies. Instead, he offers complaints about Sommers, whom he villainizes for, among other things, trying to dissuade him from conducting his dissertation research on Haiti and for deciding not to continue as his advisor. But these complaints have no obvious connection to the examination committee's determination that Delices failed his first attempt at the preliminary examination. And, even if they had some indirect tie, Delices has no evidence that any of his complaints about Sommers were the result of unlawful discrimination. To the contrary, the only evidence in the record is from the UW System. It includes a sworn declaration from Sommers that thoughtfully explains his actions and refutes any such suggestion that he acted out of discriminatory animus. (ECF No. 108.) No rational jury could find that Delices suffered race or national origin based discrimination when he was failed in his first attempt at passing the preliminary exam.

### 3. No Reasonable Jury Could Find that the Non-Renewal of Delices' AOP Fellowship Was the Result of Unlawful Discrimination.

Delices's attempt to rely on the non-renewal of his fellowship to show discrimination also fails. The UW System has again offered a legitimate explanation for its decision not to renew the fellowship. That decision was made by several faculty members of the graduate school, including Gajdardziska-Josifovska and Associate Dean Tracey Heatherington. Gajdardziska-Josifovska followed the normal process in evaluating Delices's fellowship renewal request by reviewing his transcripts and reaching out to the Department. She followed the same process for every renewal request. Her review of Delices's transcripts revealed that he had enrolled primarily in 300-level (undergraduate level) courses throughout the 2015-16 academic year, which was inconsistent with the course of study he had previously submitted when requesting renewal for the 2015-16 academic year. Delices also enrolled in many classes on a credit/no credit basis, which was in violation of the terms of the AOP Fellowship. Moreover, Delices did not have the support of the Department. In stark terms, Sommers explained that Delice was frequently absent, his work was

20

done to a low standard and not delivered when promised, and he failed his preliminary examination by a unanimous decision of his preliminary committee. Gajdardziska-Josifovska found that Delices failed to satisfy the two primary requirements of the AOP Fellowship: his transcript demonstrated that he was not making the type of academic progress expected of a graduate student, and he did not have the support of his academic department for renewal of the award.

Delices has no evidence to suggest that this detailed explanation is false or a pretext. His own claimed belief that he was discriminated against is not evidence. (ECF No. 117 at 4, 7.) Having failed to come forward with evidence that could warrant a jury finding that the UW System's explanation is a lie, Delices's claim that he was denied renewal of AOP Fellowship for discriminatory reasons fails.

### 4. The Record Confirms Delices Was Denied Promotion to Dissertator Status For Legitimate Reasons.

Delices's final alleged adverse educational action is the Department's decision to deny him dissertator status. The UW System has again carried its legal burden by coming forward with evidence showing a legitimate non-discriminatory reason for its decision. And Delices again has no evidence of any pretext.

The record confirms that Delices was denied this status after a long process in which he was provided the chance to satisfy the requirements for obtaining that status but failed to do so. As early as September 2015, Sommers was advising Delices to return to Milwaukee to establish relationships so that he could build a dissertation committee. Delices was required to assemble a dissertation committee, work with his committee to prepare and complete a dissertation prospectus demonstrating a novel area of research, and then defend that dissertation prospectus. It was Delices's responsibility, just like any other graduate student in the Department, to organize a dissertation committee, prepare a dissertation prospectus and defend it. Delices has done none of those things. The UW System has thus articulated a legitimate, non-discriminatory reason for denying Delices dissertator status.

As with his other claimed adverse educational actions, Delices has again produced nothing beyond his own speculation that Defendant's proffered reasons for not renewing his fellowship and not advancing him in the doctoral program are merely pretexts for race or national origin discrimination. Thus, he has not carried his burden.

In the end, the question before this Court is whether the evidence as a whole would allow a reasonable jury to find that the plaintiff's protected class or protected activity caused any of the

four adverse academic actions about which he complains. The record leaves no doubt that no reasonable jury could find for Delices. Accordingly, his Title VI claims for alleged race and national origin discrimination fail as a matter of law.

## II. Delices's Title VI Hostile Learning Environment Claim (Count 3) Also Fails as a Matter of Law.

Delices's next claim is that the UW System is liable to him for creating a hostile educational environment. Generally, to prevail on a hostile educational environment claim under Title VI (or Title IX), a plaintiff must show that he participated in a federally funded program that was so pervasively hostile to the student's protected class that the student was deprived of access to the educational benefits of the program. *See Qualls v Cunningham*, 183 F. App'x. 564, 567 (7th Cir. 2006); *N.K. v. St. Mary's Springs Acad. of Fond du Lac Wis., Inc.*, 965 F. Supp. 2d 1025, 1032 (E.D. Wis. 2013).

The first inquiry in addressing a Title VI claim is to determine whether the harassing conduct is "so severe, pervasive, and objectively offensive that it has a 'concrete, negative effect' on the victim's access to education." *Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 821 (7th Cir. 2003) (citation omitted). The Court determines whether the harassment is "objectively offensive" under the "totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with . . . the student's educational opportunities." *Hendrichsen v. Ball State Univ.*, 107 F. App'x 680, 684 (7th Cir. 2004). If the plaintiff meets this first test, then the court must determine whether the school's response to the harassment is "clearly unreasonable in light of the known circumstances." *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).

Delices complains that Sommers encouraged him to focus on a dissertation topic other than Haiti, provided an overly extensive reading list to prepare for his preliminary exams, failed him after his first attempt, criticized his work and opted not to support the renewal of his fellowship. Similarly, other faculty members were critical of Delices's performance as a graduate student. Even if the academic environment was subjectively offensive to Delices and even if it could be said to have interfered with his performance as a graduate student, no rational jury could call such an environment objectively offensive or the requirements unreasonable, especially given the expectations and demands of graduate school. None of the complained-of conduct was physically

threatening or humiliating. When the fall 2016 semester began, Delices had passed his preliminary exams but had yet to compose his dissertation committee and then prepare and defend his dissertation prospectus. The delay that Delices faced as a graduate student, essentially in between coursework and writing his dissertation, was not unique and has occurred with multiple other students in the department. (ECF No. 104 ¶196.)

Simply put, the academic environment described by Delices falls far short of creating an environment that a reasonable juror could find to be objectively offensive, severe, or pervasive. Moreover, as previously explained, Delices has presented no evidence from which a reasonable factfinder could infer that any of the alleged harassment was based on his race, color or national origin or prior protected activity. Summary judgment is therefore warranted on his hostile environment claim.

## III. The UW System is Entitled to Summary Judgment on Delices's Retaliation Claims (Counts 4-7).

Delices's final four counts assert claims for improper retaliation in violation of Title VI. The Seventh Circuit has not formally recognized a retaliation claim under Title VI, but other circuits and district courts within the Seventh Circuit have recognized such a claim. *See Tanner v. Bd. of Trs. of Univ. of Ill.*, No. 17-c-3039, 2018 WL 1161140, at *13 (C.D. Ill. Mar. 5, 2018) (citing *Peters v. Jenney*, 327 F.3d 307 (4th Cir. 2003)). Generally, those courts have analyzed such a claim using the same standards applicable to Title VII retaliation claims. *See Bowman v. Baltimore City Bd. of Sch. Comm'rs.*, 173 F. Supp. 3d 242, 247 (D. Md. 2016). This Court will do the same. Accordingly, to prevail on his retaliation claims, Delices must prove that he (1) engaged in an activity protected by the relevant statute, (2) suffered an adverse action and (3) there is a causal link between the protected activity and the adverse action. *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018).

Delices fails to set forth with any clarity when he engaged in protected activity, to whom, and about what. In his response brief, Delices states that he "has direct evidence and strong circumstantial evidence and pretext from multiple agents of the University to survive summary judgment." (ECF No. 117 at 28.) Delices's conclusory statement falls woefully short of proving retaliation. Although "[j]udges are not like pigs, hunting for truffles buried in briefs," *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)), the Court gleans from Delices's response brief that he contends the following academic actions were retaliatory: the investigations based on the anonymous complaint, failing his first attempt at the preliminary examination, not obtaining

23

the Department's support for the renewal of his fellowship, the withdrawal of Sommers as his advisor, and not obtaining dissertator status. (ECF No. 117 at 29.)

Despite Delices's voluminous filings with the Court, he has neither articulated nor proved a viable theory to support his retaliation claim. It is unclear precisely what actions he contends were retaliatory for engaging in activity protected by Title VI. Delices has no direct evidence of a causal link between the actions he contends were retaliatory and his protected activity. While he can rely on circumstantial evidence such as "suspicious timing, ambiguous statements, treatment of similarly-situated [students], and any other relevant information that could permit an inference of retaliation," *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 697 (7th Cir. 2017), he has no such evidence.[5] At best for Delices, the record shows that he alleged discrimination late in his tenure at UWM and also experienced steps backward in his graduate studies. But there is no evidence that the latter was caused by the former. Indeed, the timing works against Delices. He complains that the Department and Graduate School investigated him, but both investigations were conducted in response to an anonymous complaint that was received in July 2015, long before he complained about discrimination to the U.S. Department of Education's Office of Civil Rights (OCR) in February of 2016 or UWM's Office of Equity/Diversity Services (EDS) in April of 2016. They could not have been caused by his later discrimination complaints. Moreover, as noted above, and contrary to Delices's assertions, there is no evidence of any discriminatory animus related to the investigations. Delices's speculation that the author of the complaint may have been Bellegarde-Smith, the same professor who opined that Delices was an Afrocentrist and also referred to Delices as one of the worst graduate students, is not proof of discrimination and it does not tie the investigations to any of his subsequent protected activities.

---

[5] Delices claims he was a member of a group of students who *anonymously* wrote a letter to the Department entitled "Graduate Students' Grievances and Solutions" dated March 26, 2014. The stated purpose of the anonymous letter was to "mak[e] sure that the current and prospective graduate students have a fulfilling experience." (ECF No. 53-1 at 2.) To that end, the letter questioned the purpose of comprehensive examinations, raised concerns regarding the Graduate Affairs Committee, requested the hiring of more "Black Studies" graduates to send a message that the Department was "hiring its own," sought more transparency, and proposed solutions. (*Id.*) The letter did not raise any complaint that any student, including Delices, was suffering discrimination because of his or her protected class and therefore cannot constitute protected activity under Title VI. *See Brown v. William Rainey Harper Coll.*, No. 16 C 1071, 2017 WL 3278822, *5 (N.D. Ill. Aug. 1, 2017) (protected activity is established when a "complaint asserts that the plaintiff is suffering discrimination because of the plaintiff's protected class."). To the extent this letter raises a First Amendment issue, that claim was previously dismissed. (ECF No. 82.)

Delices similarly has no proof that engaging in protected activity caused him not to reach dissertator status and resulted in the nonrenewal of the AOP Fellowship. As detailed above, the record confirms that both decisions were taken for non-discriminatory reasons that have nothing to do with Delices' race or national origin or his having engaged in protected activity. At summary judgment, Delices was required to provide evidence that would link his treatment to his race or national origin. Delices's conjectures or speculations do not suffice. *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) ("inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.") (citation omitted).

## IV. Delices's Motion for Sanctions is Denied as Meritless.

On July 11, 2023, Delices filed a "renewed" motion for sanctions pursuant to Federal Rule of Civil Procedure 11 demanding sanctions and arguing that some of defendant's discovery responses were misleading and Sommers's affidavit is a fraud on the court. (ECF No. 132.) That motion can be denied for several reasons.

First, discovery in this case closed in January 2022. (ECF No. 95.) By joint motion, on November 16, 2021, the parties requested the Court extend the discovery deadline to "January 28, 2022, to allow for the Defendant to complete its production of discovery to Plaintiff and allow Plaintiff adequate time to meet and confer and file any discovery motions, if necessary. (ECF No. 94.) The Court granted that motion on November 17, 2021 and extended the discovery deadline to January 28, 2022. (ECF No. 95.) Plaintiff filed a motion to compel on January 25, 2022 (ECF No. 97) and March 2, 2022 (ECF No. 115). On March 29, 2022, Plaintiff's motions to compel were resolved by the Court in a hearing that lasted over 90 minutes. (ECF No. 127.) Plaintiff's current motion, to the extent it is arguing about discovery responses, is untimely.

Second, Delices alleges that Sommers's statements in his declaration were lies or misleading. Delices should have made such an argument in his brief in support of his motion for partial summary judgment or brief in opposition to the Defendant's motion for summary judgment, with evidentiary support, rather than filing a motion for sanctions. More unsupported complaining is not evidence of a discovery violation. Delices has not shown how Defendant's discovery responses were untruthful or misleading.

Third, Delices has invoked the wrong rule. Delices seeks sanctions under Rule 11 (ECF No. 132 at 9; ECF No. 135 at 2-5) but that rule and its associated sanctions expressly do not apply to "disclosures and discovery requests, responses, objections, and motions under Rules 26 through

37." Fed. R. Civ. P. 11(d). Accordingly, for all these reasons, Delices's motion for sanction is denied.

For the reasons given above,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No.102) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (ECF No. 112) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Sanctions (ECF No. 132) is **DENIED**.

This is case is **DISMISSED** with prejudice, and the Clerk of Court is ordered to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on March 10, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge